IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) CASE NO.: 18-00112-WS |
| PACIANO RODRIGUEZ, | ) |
| Defendant, | ) |

**SENTENCING MEMORANDUM &
MOTION FOR DOWNWARD DEPARTURE**

Comes now the defendant , by and through undersigned counsel and moves the Court to consider his sentencing memorandum and motion for a downward departure from the applicable advisory Sentencing Guidelines. In support of this motion, Mr. Rodriguez shows the following:

A.  **Imposing a Sentence**

18 U.S.C. § 3553(a) mandates that a sentencing court consider the following factors when imposing a sentence that is just, but not "greater than necessary to meet the purposes of sentencing":

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

© to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(I)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.1

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**18 U.S.C.A. § 3553**

**B.** **Nature of the Offense**

Paciano is a U.S. citizen who moved to Alabama to live with a father who ultimately deserted him and he became easy prey to a criminal scheme. He was born in Georgia and reared briefly by both parents before his father deserted the family. (PSR ¶ 35). He was raised in West Palm Beach, Florida in a single parent household by his mother, who is a naturalized citizen, and his three other siblings. (PSR ¶ 32). His mother has resided in Florida for the past eighteen years

and during this time, she has worked consistently for Targets' Department store for the past seventeen years. As Paciano began to grow and become a preteen, he desired to work to help support his mother and earn his keep. To that end, he moved briefly to live with an older sister in Evansville, Indiana, but eventually moved to Birmingham, Alabama, because he wanted to have a relationship with his father. (PSR ¶ 34).

However, the move to Birmingham did not prove to be as fruitful as he had hoped. His father had another family and found it a strain to have another child in the home and so he abandoned Paciano, for the second time of his young life. Paciano felt that his dreams of helping to provide support for his mother was vanishing and he did not want to go home a failure and become a burden to her. So, he began living in an area in Birmingham that was populated by Hispanics, who promised that they would help him find work.

Unfortunately, this area was also populated by men who manipulated teens into becoming involved in criminal activity to insulate themselves and their own wrong doings. Unwittingly, Paciano became a pawn in a high stakes game of drug trafficking. He was unaware of the serious consequences he could face by allowing himself to be used as a middle man. Although Paciano has accepted responsibility for the role he played in trafficking drugs, he neither secured the drugs or knew the person from whom the drugs were received, nor did he own a vehicle or drive to Alabama. He was a mere passenger in the car. (PSR ¶s 7, 8) The older men involved in the transaction remain at large. (See attached discovery bate stamped page 6)

C.  **Personal Characteristics of Mr. Rodriguez**

Paciano has tried to become a model citizen since being back in his hometown of West Palm Beach, Florida. He has been able to fulfill his desire to help support his mother in

becoming a contributing member towards family expenses. He has secured employment with STO Landscaping Services, Inc. and has taken his responsibilities very serious. His enthusiasm for his job has won the admiration and praise of his employers. Paciano has learned the value of hard work and '*an honest days pay*'. He clearly understands the wisdom of avoiding street hustlers. He acknowledges that because of his naivete and a strong desire to prove that he could survive alone, he made unwise decisions that led to his first and only arrest. (PSR ¶ 26-30).

**D.     Motion for Downward Departure**

Mr. Rodriguez should be considered for a role adjustment. The mitigating role adjustment under U.S.S.G. § 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him or her substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3 (A)) (Emphasis added). The determination of whether a defendant is entitled to such a reduction is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (n.3©).   The defendant has the burden of proving his minor participation. Mr. Rodriguez argues that he was just a pawn in the entire criminal scheme and that the older participants were savvy enough to insulate themselves against capture. (See discovery bate stamped page 6). Mr. Rodriguez asks the court to consider that he was a minor participant and to decrease his offense level by 2 points.

It is a widespread but serious misconception that Congress, in passing the Sentencing Reform Act of 1984 and directing the creation of the Guidelines, intended to do away with consideration of the personal characteristics of the offender. The importance of the individual characteristics of the defendant is stressed in the new legislation. U.S. v. Rodriguez, 724 F. Supp. 1118, 1119 (S.D.N.Y. 1989). See also United States v. Gonzales, 2 Fed.Sent.R. 81, 1989

WL 86021 (S.D.N.Y.1989), where a downward departure was granted due to family ties; <u>United States v. Pipich</u>, 1 Fed.Sent.R. 120, 688 F.Supp. 191 (D.Md.1988), where a departure downward was justified by employment record; and <u>United States v. Haigler</u>, 1 Fed.Sent.R. 34 (D.Minn.1988) where downward departure was granted because of personal circumstances of defendant. <u>U.S. v. Rodriguez</u>, 724 F. Supp. 1118, 1122 (S.D.N.Y. 1989).

## Conclusion

Mr. Rodriguez asks the Court to consider the totality of his personal history and characteristics and his efforts to redeem himself while being out on release, as well as character letters submitted on his behalf in a separate filing. Mr. Rodriguez respectfully asks the Court to consider a probationary sentence and submits that a probationary sentence would be and is "sufficient, but not greater than necessary" to serve the purposes of a federal sentence befitting the circumstances of his case. Mr. Rodriguez prays that the Court will allow him to continue on his path to redemption and being a law abiding and productive citizen and to correct the most serious mistake he has made in all of his life.

Respectfully Submitted,

/S/LAWANDA J. O'BANNON
LaWanda J. O'Bannon

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the ___17th___ day of September 2018, served a copy of the foregoing pleading by electronic filing of the same with the Clerk of Court.

/s/ LaWanda J. O'Bannon
LAWANDA JEAN O'BANNON

individual come from behind BOLILLO's house carrying a bag, meet at the CI's vehicle, talk briefly to BOLILLO, and then depart afoot down the alley. Later, the CI informed agents that there was what appeared to be methamphetamine in the bag.

The CI, RODRIGUEZ, and CHITO then departed the area and returned to RODRIGUEZ' residence. It should be noted that CHITO resides across the street from RODRIGUEZ. Prior to arriving at RODRIGUEZ' residence, CHITO received a phone call from BOLILLO instructing them to turn and around and return to his (BOLILLO) house because he had the requested methamphetamine and was ready to sell it. At the instruction of HSI Agents, the CI told BOLILLO via CHITO that they would return the following morning.

On March 1, 2018, The CI returned to RODRIGUEZ' residence. There, the CI picked up RODRIGUEZ and CHITO before proceeding to BOLILLO's residence. Upon arriving at the residence, BOLILLO informed the CI and CHITO that the narcotics were on the way and should arrive within a short time. Eventually, someone driving a dark colored truck arrived and went inside the residence. This person gave BOLILLO the methamphetamine who in turn gave it to CHITO and the CI.

After receiving the narcotics, the CI drove CHITO and RODRIGUEZ back to CHITO's residence. CHITO exited the vehicle, and the CI then proceeded to drive RODRIGUEZ to meet the person that wanted to purchase the narcotics. Ultimately, the CI parked in a dirt lot off in Bay Minette, Alabama where RODRIGUEZ was to meet the person to whom he was to sell the narcotics. Upon arriving at the meet location, RODRIGUEZ exited the vehicle and began walking towards the vehicle where this buyer was located. It should be noted that Agents were staged at and near this meet location.

As RODRIGUEZ neared the vehicle, Agents approached him and instructed him to the ground. Upon securing RODRIGUEZ in handcuffs, Agents located a plastic bag in his pocket that contained approximately 8.6 ounces of a crystal-like substance. A field test of this substance resulted in a positive indication for the presence of methamphetamine. Subsequently, Agents arrested RODRIGUEZ and booked him into the Baldwin County Jail on Alabama State charges. Narcotic Agents of the Alabama Law Enforcement Agency (ALEA) maintained custody of the narcotics.

Prior to transporting RODRIGUEZ to jail, he gave a statement after being advised of his constitutional rights. He stated he understood his rights and waived said rights. This statement was made in the presence of HSI Agents Angelo Fermo, Matthew Chakwin, and others. RODRIGUEZ admitted that his friend, CHITO, took him to a place in Bessemer, AL where they obtained the methamphetamine. He stated he was planning to sell it to someone where he was encountered.

On March 2, 2018, HSI took possession of the narcotics seized from RODRIGUEZ. Agents sent the narcotics to the Customs and Border Protection laboratory in Houston, TX for analysis.

On April 2, 2018, the CBP Laboratory informed HSI Agents that they had completed the analysis of the submitted substance and the laboratory provided HSI with a report of their findings. According to the CBP report, the substance seized from RODRIGUEZ was 231.8 grams of methamphetamine with a purity level of 14.8% by weight.

## ADDITIONAL INFORMATION

CHITO remains at large and has informed the CI that he is still involved in selling methamphetamine. HSI Birmingham has identified BOLILLO and is currently investigating his activity in the distribution of methamphetamine.